## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LOWER MANHATTAN DISASTER SITE LITIGATION<br>------------------------------------------------------------------------------X<br><br>THIS DOCUMENT APPLIES TO ALL LOWER MANHATTAN DISASTER SITE LITIGATION<br><br><br><br><br>------------------------------------------------------------------------------X | **Case No.:**<br>**21MC102**<br>**(AKH)**<br><br><br>**MASTER**<br>**COMPLAINT**<br><br><br>**Jury Trial**<br>**Demanded** |

By Order of the Honorable  Alvin K. Hellerstein, United States District Judge, dated _____ ("The Order), directing the filing of Master Pleadings, this Complaint, is the Master Complaint applicable and filed on behalf of Plaintiffs. This Complaint is also applicable to the Plaintiff's spouses ("Derivative Plaintiffs") and, where applicable to current or future substituted party representatives (i.e. administrators or executors of deceased plaintiffs' or derivative plaintiffs' estates). ("Representative Plaintiff" and Representative Derivative Plaintiff," respectively). The aforementioned Order also directed the filing with the Court of a pro-forma Complaint by Adoption (Check-Off Complaint). Further, a plaintiff specific Check-Off Complaint is to be filed by individual plaintiffs setting forth allegations as against specified defendants, with respect to work performed at the properties and/or locations so specified in such Complaint by Adoption (Check-Off Complaint). Said Complaint by Adoption (Check-Off Complaint) further alleges and provides information specific to each individual plaintiff as to locations worked and injuries sustained. By operation of the Order aforementioned, all allegations

pleaded herein are deemed pleaded in any Complaint by Adoption (Check-Off Complaint), hereinafter filed by any Plaintiff.

The Plaintiffs, individually or in their Representative capacity by their attorneys, state and allege the following upon information and belief as against the Defendants. Answering Defendant should respond to the allegations in this complaint with reference the property and/or location, as alleged herein, for which an interest or relationship exists, as alleged.

## I.

## <u>INTRODUCTION</u>

1.  Plaintiff brings this action against the Defendants, as specified herein, seeking redress for injuries they have suffered in the past, and will continue to suffer, as a result of the Defendants' reckless, grossly negligent, and negligent ownership operation, leasing, maintenance, control, conduct, supervision, and management of the premises or place of business or work performed at same, and known as and/or located at: as specified  herein**,** all in the City, County and State of New York, (hereinafter referred to as "the locations,") which were effected by and following the terrorist attacks of September 11, 2001, said area designated herein as the Lower Manhattan Disaster Site.  The defendants are the owners or/their agents, operators, lessees, contractors or/their agents, managers, agents, insurers, permittees, and or/their employees and/or agents, and did own, operate, lease, manage, maintain, and/or control certain buildings in the Lower Manhattan Disaster Site, and/or who performed work and/or entered into agreements relative to certain work, labor and services such

as cleanup, repairs, demolitions, construction and excavation of buildings in the Lower Manhattan Disaster Site.

2. Because of the collapse of the World Trade Center from damage sustained in the attacks, the Twin Towers and Seven World Trade Center collapsed, spreading known and unknown toxic substances throughout the World Trade Center Site and the surrounding areas, in the Lower Manhattan Disaster Site,  including "the locations," portions of which, while owned, operated, leased, maintained, controlled, supervised, and managed by the Defendants, remained dangerous, defective, hazardous, toxic, unguarded, unsupervised, and unprotected for multiple days, weeks, and/or months thereafter.   The Plaintiff participated in clean-up, construction, demolition, excavation, and/or repair, of the "locations" on or about or following September 11, 2001, and during the days, weeks and/or months that followed, and or as specified in the Plaintiff-Specific Complaint by Adoption.

3. The nature of this action is to recover money damages for the personal injuries, pain and suffering, loss of income, loss of services (where applicable), wrongful death (where applicable) and other damages sustained by the Plaintiff as a result of the carelessness, recklessness and negligence of the Defendants, their agents, servants and/or employees, in failing to provide the Plaintiff with a safe place to work at the buildings and/or place of business known as and/or located at the "locations," and in failing to provide the Plaintiff with proper and appropriate respiratory protection and protection from exposure to toxins during the time that the  Plaintiff participated in the  clean-up, construction, demolition, excavation, and/or repair, at the buildings and/or place of business known as and/or located at the "locations," that commenced

on or about or following September 11, 2001, and continued for many days, weeks, and/or months thereafter, and or as specified in the Plaintiff-Specific Complaint by Adoption.

4. The Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), Pub. 2 No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101 et. seq.) passed in the aftermath of September 11, 2001, creates "a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001." ATSSSA § 408 (b) (1). Further, The ATTSA§ 408 (b) (2) states: that "the substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal Law.

5. The Plaintiff also seeks recovery for Defendants' failure to provide proper and appropriate respiratory protection and proper and appropriate protective clothing and equipment; and for failing to properly monitor air quality; and for failing to properly notify him/her of the dangerous levels of toxins and contaminants in the air in, at and/or around the buildings and/or place of business known as and/or located at the "locations;" and for the Defendants' failure to comply with the provisions of the Labor Law of the State of New York, Sections 200 and 241(6), and the New York State Industrial Code and the requirements of the Occupational Safety & Health Administration and other applicable federal, state and local statutes, law, rules, regulations and ordinances.

6. As a result of the foregoing, and at all relevant times, the Plaintiff was exposed to toxins, contaminants and other harmful airborne products such as fiberglass, glass, silica, asbestos, lead, benzene, organic matter, and other hazardous chemicals, substances and elements in, at and/or around the buildings and/or place of business known as and/or located at the "locations," In consequence of said exposure (as referenced above and herein), the Plaintiff was injured, said injury being serious and permanent.

7. Defendants are thereby further liable to the Plaintiff under Sections 200 and 241(6) of the New York Labor Law, for the failure to comply with the applicable provisions of the Occupational Safety & Health Act, 29 U.S.C. Sections 654 *et. seq.* and the provisions of 29 C.F.R. 1910.38; 1910.132-134; 1910.146; 1910.120; 1910.156; 1910.1001; 1910.1025; 1910.1027; 1910.1000; and 1910.1200 as well as New York State Labor Law, Article 2, Section 27-a and Article 28, Section 878 and 12 NYCRR Sections 820.4 and 23.1-8 and other applicable federal, state and local statutes, law, rules, regulations and ordinances. Defendants are also liable for their negligence, gross negligence, and recklessness under common law.

## II.

## <u>JURISDICTION</u>

8. The United States District Court for the Southern District of New York has original jurisdiction over the Plaintiff's claims pursuant to 28 USC §1331, based upon §408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001, and or as judicially determined.

9.  This Court has supplemental jurisdiction pursuant to 28 USC §1367(a) based upon the New York Labor Law §200 and §241(6), and common law negligence.

## III.

## VENUE

10.  Venue is proper in this judicial district pursuant to 28 USC §1391(b) because Plaintiff's causes of action arose in this district and because the events giving rise to the Plaintiff's claims transpired in this district, pursuant to §408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001.

## IV.

## PARTIES

11.  The Plaintiff is and was, at all relevant times, a worker, who, during the course of said employment, participated in the clean-up, construction, demolition, excavation, and/or repair, operations at the buildings and/or place of business known as and/or located at the "locations," on or about or following September 11, 2001, and during the days, weeks and/or months that followed, and or as specified in the Plaintiff-Specific Complaint by Adoption.

12.  The Plaintiff sustained physical and other injuries in consequence of his/her exposure to toxins, contaminants and other harmful airborne products at the buildings and/or place of business known as and/or located at the "locations," during his/her participation in the clean-up, construction, demolition, excavation, and/or repair operations. The following person(s) is (are) a Plaintiff (Plaintiffs) in this action.

a.  The Plaintiff resides at the following address: See Plaintiff-Specific Complaint by Adoption. The Plaintiff worked at the buildings and/or place of business known as and/or located at the "locations," and was involved in the clean-up, construction, demolition, excavation, and/or repair operations at the buildings and/or place of business known as and/or located at the "locations." The case specific information of which, for each Plaintiff as specified in the Plaintiff-Specific Complaint by Adoption.

b.  The Representative Plaintiff currently resides at: See Plaintiff-Specific Complaint by Adoption. The Representative Plaintiff was appointed representative of the Decedent Plaintiff, and/or the estate of the Decedent Plaintiff, the case specific information of which, for each Representative Plaintiff as specified in the Plaintiff-Specific Complaint by Adoption.

c.  The Derivative Plaintiff currently resides at: See Plaintiff-Specific Complaint by Adoption. The Derivative Plaintiff was married to the Plaintiff at the time of the occurrence, the case specific information of which, for each Derivative Plaintiff as specified in the Plaintiff-Specific Complaint by Adoption.

d.  The Representative Derivative Plaintiff currently resides at: See Plaintiff-Specific Complaint by Adoption. The Representative Derivative Plaintiff was appointed representative of the Decedent Derivative Plaintiff, and/or the estate of the Decedent Derivative Plaintiff, the case specific information of which, for each Representative Derivative Plaintiff as specified in the Plaintiff-Specific Complaint by Adoption.

13. The following entities, and or as additionally specified in a Plaintiff-Specific Complaint by Adoption, are Defendants in this action. The defendants in this action, are enumerated below, respective to the "locations" applicable to each, for which the allegations in this Complaint are made during the time periods as alleged. Each sub- paragraph shall be deemed to allege: "With reference to (*address*), the defendant (*entity*) was a and/or the *(relationship)* of and/or at the subject property and/or in such relationship as the evidence may disclose," (i.e. With reference to *4 Albany Street*, defendant *Bankers Trust Company,* was the *owner* of the subject project and/or in such relationship as the evidence may disclose)

☐ (13-1) 4 ALBANY STREET

    ☐ A.  BANKERS TRUST COMPANY (*OWNER*)

    ☐ B.  BANKERS TRUST NEW YORK CORPORATION (*OWNER*)

    ☐ C.  BANKERS TRUST CORP.(*OWNER* )

    ☐ D.  DEUTSCHE BANK TRUST COMPANY AMERICAS (*OWNER*)

    ☐ E.  DEUTSCHE BANK TRUST CORPORATION (*OWNER*)

    ☐ F.  JONES LANG LASALLE AMERICAS, INC. (*OWNER*)

    ☐ G.  JONES LANG LASALLE SERVICES, INC. (*OWNER*)

    ☐ H.  AMBIENT GROUP, INC. *(CONTRACTOR)*

    ☐ I.  RJ LEE GROUP, INC. (*OWNER*)

    ☐ J.  TISHMAN INTERIORS CORPORATION(*CONTRACTOR)*

☐ (13-2) 99 BARCLAY STREET

    ☐ A.  THE BANK OF NEW YORK COMPANY, INC. (*OWNER*)

    ☐ B.  ONE WALL STREET HOLDINGS, LLC. (*OWNER*)

☐ (13-3) 101 BARCLAY STREET (BANK OF NEW YORK)

    ☐ A.   THE BANK OF NEW YORK COMPANY, INC. (*OWNER*)

    ☐ B.   ONE WALL STREET HOLDINGS, LLC. (*OWNER*)

☐ (13-4) 125 BARCLAY STREET

    ☐ A.   ELAINE ESPEUT, AS TRUSTEE UNDER A DECLARATION OF TRUST (*OWNER*)

    ☐ B.   FRANK MORELLI, AS TRUSTEE UNDER A DECLARATION OF TRUST (*OWNER*)

    ☐ C.   37 BENEFITS FUND TRUST (*OWNER*)

☐ (13-5) 20 BROAD STREET

    ☐ A.   20 BROAD ST. CO. *(OWNER)*

    ☐ B.   VORNADO OFFICE MANAGEMENT, LLC *(AGENT)*

☐ (13-6) 30 BROAD STREET (CONTINENTAL BANK BUILDING)

    ☐ A.   30 BROAD STREET ASSOCIATES, LLC (*OWNER*)

    ☐ B.   MURRAY HILL PROPERTIES (*AGENT)*

☐ (13-7) 40 BROAD STREET

    ☐ A.   40 BROAD, LLC *(OWNER)*

    ☐ B.   CB RICHARD ELLIS *(AGENT)*

☐ (13-8) 60 BROAD STREET

    ☐ A.   WELLS 60 BROAD STREET, LLC *(OWNER)*

    ☐ B.   COGSWELL REALTY GROUP & WELLS REAL ESTATE FUNDS *(AGENT)*

☐ (13-9) 75 BROAD STREET

    ☐A    75 BROAD LLC *(OWNER)*

    ☐B.    JEMB REALTY CORP. *(AGENT)*

☐ (13-10) 85 BROAD STREET

    ☐A    ASSAY PARTNERS *(AGENT)*

☐ (13-11)104 BROAD STREET (NEW YORK TELEPHONE COMPANY BUILDING)

    ☐A.    CITY OF NEW YORK *(OWNER)*

☐ (13-12) 1 BROADWAY

    ☐A.    KENYON & KENYON (*OWNER*)

    ☐B.    LOGANY LLC (*OWNER*)

    ☐C.    ONE BROADWAY, LLC (*OWNER*)

☐ (13-13) 2 BROADWAY

    ☐A.    2 BROADWAY, LLC *(OWNER)*

    ☐B.    COLLIERS ABR, INC. *(AGENT)*

☐ (13-14) 25 BROADWAY

    ☐A.    25 BROADWAY OFFICE PROPERTIES, LLC *(OWNER)*

    ☐B.    ACTA REALTY CORP. *(AGENT)*

☐ (13-15) 30 BROADWAY

    ☐ A.   CONSTITUTION REALTY LLC (*OWNER*)

☐ (13-16) 45 BROADWAY

    ☐ A.   B.C.R.E. *(AGENT)*

☐ (13-17) 61 BROADWAY

    ☐ A.   CROWN BROADWAY, LLC (*OWNER*)

    ☐ B.   CROWN PROPERTIES, INC (*OWNER*)

    ☐ C.   CROWN 61 ASSOCIATES, LP (*OWNER*)

    ☐ D.   CROWN 61 CORP (*OWNER*)

☐ (13-18) 71 BROADWAY

    ☐ A.   ERP OPERATING UNLIMITED PARTNERSHIP *(OWNER)*

    ☐ B.   EQUITY RESIDENTIAL *(AGENT)*

☐ (13-19) 90 EAST BROADWAY

    ☐ A.   SUN LAU REALTY CORP. (*OWNER*)

☐ (13-20) 111/113 BROADWAY

    ☐ A   TRINITY CENTRE LLC (*OWNER*)

    ☐ B.   CAPITAL PROPERTIES, INC. (*OWNER*)

☐ (13-21) 115/119 BROADWAY

    ☐ A.   TRINITY CENTRE LLC (*OWNER*)


☐ (13-22) 120 BROADWAY (THE EQUITABLE BUILDING)

    ☐ A.   BOARD OF MANAGERS OF THE 120 BROADWAY
CONDOMINIUM (CONDO #871) (*OWNER*)

    ☐ B.   120 BROADWAY, LLC (*OWNER*)

    ☐ C.   120 BROADWAY CONDOMINIUM (CONDO #871) (*OWNER*)

    ☐ D.   120 BROADWAY PROPERTIES, LLC (*OWNER*)

    ☐ E.   715 REALTY CO. (*OWNER*)

    ☐ F.   SILVERSTEIN PROPERTIES, INC. (*OWNER*)

    ☐ G.   120 BROADWAY HOLDING, LLC (*OWNER*)

    ☐ H.   CITIBANK, NA (*OWNER*)


☐ (13-23) 140 BROADWAY

    ☐ A.   MSDW 140 BROADWAY PROPERTY L.L.C. (*OWNER*)


☐ (13-24) 150 BROADWAY

    ☐ A.   150 BROADWAY N.Y. ASSOCS. L.P. (*OWNER*)

    ☐ B.   150 BROADWAY CORP. (*OWNER*)

    ☐ C.   BAILEY N.Y. ASSOCIATES (*OWNER*)

    ☐ D.   AT&T WIRELESS SERVICES, INC. (*OWNER*)

    ☐ E.   BROWN HARRIS STEVENS COMMERCIAL SERVICES, LLC
*(AGENT)*

☐ (13-25) 160 BROADWAY

    ☐ A.  DAROR ASSOCIATES, LLC *(OWNER)*

    ☐ B.  BRAUN MANAGEMENT, INC. *(AGENT)*


☐ (13-26) 170 BROADWAY

    ☐ A.  AMG REALTY PARTNERS, LP *(OWNER)*

    ☐ B.  JONES LANG LASALLE AMERICAS, INC. *(OWNER)*

    ☐ C.  JONES LANG LASALLE SERVICES, INC. *(OWNER)*

    ☐ D.  AMBIENT GROUP, INC. *(CONTRACTOR)*


☐ (13-27) 214 BROADWAY

    ☐ A.  122 BROADWAY, LLC *(OWNER)*


☐ (13-28) 222 BROADWAY

    ☐ A.  222 BROADWAY, LLC *(OWNER)*

    ☐ B.  SWISS BANK CORPORATION *(OWNER)*

    ☐ C.  CUSHMAN & WAKEFIELD, INC. *(OWNER)*

    ☐ D.  CHASE MANHATTAN BANKING CORPORATION *(OWNER)*


☐ (13-29) 225 BROADWAY

    ☐ A.  225 BROADWAY COMPANY LP *(OWNER)*

    ☐ B.  BRAUN MANAGEMENT, INC. *(OWNER)*


☐ (13-30) 230 BROADWAY

    ☐ A.  233 BROADWAY OWNERS, LLC *(OWNER)*

☐ (13-31) 233 BROADWAY

    ☐A.  233 BROADWAY OWNERS, LLC (*OWNER*)

☐ (13-32) 250 BROADWAY
    ☐A.  1221 AVENUE HOLDINGS, LLC *(OWNER)*

☐ (13-33)  125 CEDAR STREET

    ☐A.  120 LIBERTY ST., LLC *(OWNER)*

☐ (13-34) 130 CEDAR STREET

    ☐A.  AJ GOLDSTEIN & CO. (*OWNER*)

    ☐ B.  CAROL GAYNOR, AS TRUSTEE OF THE CAROL GAYNOR TRUST (*OWNER*)

    ☐C.  MATTHEW A. GELBIN, AS TRUSTEE OF THE GELBIN FAMILY (*OWNER*)

    ☐D.  NATALIE S. LEBOW, AS TRUSTEE OF THE JERRY P. LEBOW FAMILY TRUST (*OWNER*)

    ☐E.  NATALIE S. LEBOW, AS TRUSTEE OF THE JEREMIAH PHILIP LEBOW REVOCABLE TRUST (*OWNER*)

    ☐F.  CAROL GAYNOR TRUST (*OWNER*)

    ☐G.  PAMELA BETH KLEIN, AS TRUSTEE OF THE PAMELA AND ROWAN KLEIN TRUST (*OWNER*)

    ☐H.  ROWAN K. KLEIN, AS TRUSTEE OF THE PAMELA AND ROWAN KLEIN TRUST (*OWNER*)

    ☐I.  FRED GOLDSTEIN  (*OWNER*)

    ☐J.  MARGARET G. WATERS (*OWNER*)

    ☐K.  MARGUERITE K. LEWIS, AS TRUSTEE UNDER THE LAST WILL  AND TESTAMENT OF LOUIS W. GOLDSTEIN (*OWNER*)

☐L.   HERMAN L. BLUM, AS TRUSTEE UNDER THE LAST WILL
AND TESTAMENT    OF LOUIS W. GOLDSTEIN (*OWNER*)

☐M.   SYLVIA R. GOLDSTEIN (*OWNER*)

☐N.   RUTH G. LEBOW (*OWNER*)

☐O.   HAROLD G. GOLDSTEIN, AS TRUSTEE UNDER
DECLARATION OF    TRUST (*OWNER*)

☐P.   IDELL GOLDSTEIN, AS TRUSTEE UNDER DECLARATION
OF TRUST (*OWNER*)

☐Q.   HARLAND GAYNOR, AS TRUSTEE UNDER DECLARATION
OF TRUST (*OWNER*)

☐R.   SHIRLEY G. SHOCKLEY, AS TRUSTEE UNDER
DECLARATION OF TRUST (*OWNER*)

☐S.   BETTY JEAN GRANQUIST (*OWNER*)

☐T.   CAROL MERRIL GAYNOR (*OWNER*)

☐U.   ALAN L. MERRIL (*OWNER*)


☐ (13-35) 90 CHAMBERS STREET

☐    90 CHAMBERS REALTY, LLC *(OWNER)*


☐ (13-36) 105 CHAMBERS STREET

☐    DATRAN MEDIA *(OWNER)*


☐ (13-37) 145 CHAMBERS STREET

☐A.   145 CHAMBERS A CO. (*OWNER*)

☐ (13-38) 199 CHAMBERS STREET (BOROUGH OF MANHATTAN
COMMUNITY COLLEGE (CUNY))

    ☐ A.   BOROUGH OF MANHATTAN COMMUNITY COLLEGE


☐ (13-39) 345 CHAMBERS STREET (STUYVESANT HIGH SCHOOL)

    ☐ A.  TRIBECA LANDING L.L.C. (*OWNER*)

    ☐ B.  BOARD OF EDUCATION OF THE CITY OF NEW YORK
(*OWNER*)

    ☐ C.  NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY
(*OWNER*)

    ☐ D.  THE CITY OF NEW YORK (*OWNER*)

    ☐ E.  BATTERY PARK CITY AUTHORITY (*OWNER*)

    ☐ F.  DEPARTMENT OF BUSINESS SERVICES *(AGENT)*


☐ (13-40) 400 CHAMBERS STREET

    ☐ A.  THE RELATED COMPANIES, LP (*OWNER*)

    ☐ B  RELATED MANAGEMENT CO., LP (*OWNER*)

    ☐ C.  THE RELATED REATLY GROUP, INC (*OWNER*)

    ☐ D.  RELATED BPC ASSOCIATES, INC. (*OWNER*)


☐ (13-41) 55 CHURCH STREET (MILLENIUM HILTON HOTEL)

    ☐ A.  CDL NEW YORK LLC MILLENIUM BROADWAY *(OWNER)*


☐ (13-42) 90 CHURCH STREET (POST OFFICE)

    ☐ A.  90 CHURCH STREET LIMITED PARTNERSHIP (*OWNER*)

    ☐ B.  BOSTON PROPERTIES, INC. (*OWNER*)

☐C.   STUCTURE TONE (UK), INC. *(CONTRACTOR)*

☐D.   STRUCTURE TONE GLOBAL SERVICES, INC. *(CONTRACTOR)*

☐E.   BELFOR USA GROUP, INC. *(CONTRACTOR)*

☐F.   AMBIENT GROUP, INC. *(CONTRACTOR)*

☐ (13-43) 99 CHURCH STREET

☐A. MOODY'S HOLDINGS, INC. *(OWNER)*

☐B. GRUBB & ELLIS MANAGEMENT SERVICES *(AGENT)*

☐ (13-44) 100 CHURCH STREET

☐A.   THE CITY OF NEW YORK *(OWNER)*

☐B. 100 CHURCH LLC *(OWNER)*

☐C.   ZAR REALTY MANAGEMENT CORP. *(AGENT)*

☐D.   MERRILL LYNCH & CO, INC. *(OWNER)*

☐E.   AMBIENT GROUP, INC. *(CONTRACTOR)*

☐F.   INDOOR ENVIRONMENTAL TECHNOLOGY, INC. *(CONTRACTOR/AGENT)*

☐G.   GPS ENVIRONMENTAL CONSULTANTS, INC. *(CONTRACTOR/AGENT*

☐H.   CUNNINGHAM DUCT CLEANING CO., INC. *(CONTRACTOR)*

☐I.   TRC ENGINEERS, INC. *(CONTRACTOR/AGENT*

☐J.   INDOOR AIR PROFESSIONALS, INC. *(CONTRACTOR/AGENT*

☐K.   LAW ENGINEERING P.C. *(CONTRACTOR/AGENT*

☐L.   ROYAL AND SUNALLIANCE INSURANCE GROUP, PLC *(OWNER)*

17

☐ (13-45) 110 CHURCH STREET

    ☐ A.   110 CHURCH LLC *(OWNER)*

    ☐ B.   53 PARK PLACE LLC *(OWNER)*

    ☐ C.   ZAR REALTY MANAGEMENT CORP. *(AGENT)*

    ☐ D.   LIONSHEAD DEVELOPMENT LLC *(OWNER/AGENT)*

    ☐ E.   LIONSHEAD 110 DEVELOPMENT LLC *(OWNER/AGENT)*

☐ (13-46) 120 CHURCH STREET (BANK OF NEW YORK)

    ☐ A.   110 CHURCH LLC *(OWNER)*

    ☐ B.   53 PARK PLACE LLC *(OWNER)*

    ☐ C.   ZAR REALTY MANAGEMENT CORP. *(AGENT)*

    ☐ D.   LIONSHEAD DEVELOPMENT LLC *(OWNER/AGENT)*

    ☐ E.   LIONSHEAD 110 DEVELOPMENT LLC *(OWNER/AGENT)*

☐ (13-47) 22 CORTLANDT STREET (CENTURY 21)

    ☐ A.   MAYORE ESTATES LLC *(OWNER)*

    ☐ B.   80 LAFAYETTE ASSOCIATES, LLC *(OWNER)*

    ☐ C.   MAYORE ESTATES LLC AND 80 LAFAYETTE ASSOCIATION LLC AS TENANTS IN COMMON *(OWNER)*

    ☐ D.   BLUE MILLENNIUM REALTY LLC *(OWNER)*

    ☐ E.   CENTURY 21, INC. *(OWNER)*

    ☐ F.   B.R. FRIES & ASSOCIATES, INC. *(AGENT)*

    ☐ G.   STONER AND COMPANY, INC. *(AGENT)*

☐ H.   HILLMAN ENVIRONMENTAL GROUP, LLC.
       *(AGENT/CONTRACTOR)*

☐ I    GRUBB & ELLIS MANAGEMENT SERVICES *(AGENT)*

☐ (13-48) 26 CORTLANDT STREET (CENTURY 21)

☐ A.   BLUE MILLENNIUM REALTY LLC *(OWNER)*

☐ B.   CENTURY 21 DEPARTMENT STORES LLC *(OWNER)*

☐ C.   GRUBB & ELLIS MANAGEMENT SERVICES *(AGENT)*

☐ (13-49) 7 DEY STREET (GILLESPI BUILDING)

☐ A.   SAKELE BROTHERS LLC *(OWNER)*

☐ (13-50) 1 FEDERAL PLAZA

☐      US GOVERNMENT *(OWNER)*

☐ (13-51) 26 FEDERAL PLAZA (JACOB K. JAVITS FEDERAL BUILDING)

☐ A.   TRIO ASBESTOS REMOVAL *(CONTRACTOR)*

☐ (13-52) 163 FRONT STREET

☐ A.   AMERICAN INTERNATIONAL REALTY CORP. *(OWNER)*

☐ B.   AMERICAN INTERNATIONAL GROUP *(OWNER)*

☐ (13-53) 77 FULTON STREET

☐ A.   SOUTHBRIDGE TOWER, INC. *(OWNER)*

☐ (13-54) GATE HOUSE

    ☐A.   THE CITY OF NEW YORK *(OWNER)*

☐ (13-55) 100 GOLD STREET

    ☐A.   CITY WIDE ADMINISTRATIVE SERVICES *(OWNER)*

☐ (13-56) 240 GREENE STREET

    ☐A.   NEW YORK UNIVERSITY *(OWNER)*

    ☐B.   DORMITORY AUTHORITY OF THE STATE OF NEW YORK
        *(OWNER)*

☐ (13-57) 70 GREENWICH STREET (PARKING GARAGE)

    ☐A.   EDISON PARKING MANAGEMENT, L.P. *(OWNER/AGENT)*

    ☐B.   ALLRIGHT PARKING MANAGEMENT, INC.
        *(OWNER/AGENT)*

    ☐C.   CENTRAL PARKING SYSTEM OF NEW YORK, INC.
        *(OWNER/AGENT)*

☐ (13-58) 88 GREENWICH STREET

    ☐A.   BLACK DIAMONDS LLC *(OWNER)*

    ☐B.   88 GREENWICH LLC *(OWNER)*

☐ (13-59) 108 GREENWICH STREET

    ☐A.   JOSEPH MARTUSCELLO *(OWNER)*

☐ (13-60) 114 GREENWICH STREET

    ☐ A.   SENEX GREENWICH REALTY ASSOCIATES, LLC *(OWNER)*


☐ (13-61) 120 GREENWICH PLACE

    ☐ A.   SENEX GREENWICH REALTY ASSOCIATES *(OWNER)*


☐ (13-62) 234 GREENWICH STREET

    ☐ A.   THE BANK OF NEW YORK *(OWNER)*


☐ (13-63) 390 GREENWICH STREET

    ☐ A.   STATE STREET BK & TRTETC *(OWNER)*

    ☐ B.   CITIGROUP CORPORATE REALTY SERVICES *(AGENT)*


☐ (13-64) 7 HANOVER SQUARE

    ☐ A.   MB REAL ESTATE *(AGENT)*

    ☐ B.   SEVEN HANOVER ASSOCIATES *(OWNER)*


☐ (13-65) 40 HARRISON STREET (INDEPENDENCE PLAZA)

    ☐ A.   AM & G WATERPROOFING LLC *(CONTRACTOR)*


☐ (13-66) 60 HUDSON STREET

    ☐   60 HUDSON OWNER, LLC *(OWNER)*

☐ (13-67) 315 HUDSON STREET

    ☐    315 HUDSON LLC *(OWNER)*

☐ (13-68) 2 JOHN STREET

    ☐ A.   GOTHAM ESTATE, LLC *(OWNER)*

    ☐ B.   GOTHAM ESTATE, LLC *(AGENT)*

☐ (13-69) 45 JOHN STREET

    ☐ A.   BANK OF NEW YORK *(OWNER)*

☐ (13-70) 99 JOHN STREET

    ☐ A.   ROCKROSE DEVELOPMENT CORP. *(OWNER)*

☐ (13-71) 100 JOHN STREET

    ☐ A.   MAZAL GROUP *(OWNER)*

    ☐ B.   NEWMARK KNIGHT FRANK *(AGENT)*

☐ (13-72) ONE LIBERTY PLAZA

    ☐ A.   NEW LIBERTY PLAZA LP *(OWNER)*

    ☐ B.   WORLD FINANCIAL PROPERTIES, L.P. *(OWNER)*

    ☐ C.   WFP ONE LIBERTY PLAZA CO., L.P. *(OWNER)*

    ☐ D.   ONE LIBERTY PLAZA *(OWNER)*

    ☐ E.   BROOKFIELD FINANCIAL PROPERTIES, INC. *(OWNER)*

    ☐ F.   WFP ONE LIBERTY PLAZA, CO. GP, CORP. *(OWNER)*

☐ G.   THE ONE LIBERTY PLAZA CONDOMINIUM

(CONDO #1178) *(OWNER)*

☐ H.   THE BOARD OF MANAGERS OF THE ONE LIBERTY

PLAZA CONDOMINIUM (CONDO #1178) *(OWNER)*

☐ I.   BFP ONE LIBERTY PLAZA CO., LLC *(OWNER)*

☐ J.   NATIONAL ASSOCIATION OF SECURITIES DEALERS,

INC. *(OWNER)*

☐ K.   NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY

*(OWNER)*

☐ L.   NEW YORK CITY ECONOMIC DEVELOPMENT

CORPORATION *(OWNER)*

☐ M.   NEW YORK CITY INDUSTRIAL DEVELOPMENT

CORPORATION *(OWNER)*

☐ N.   BLACKMON-MOORING-STEAMATIC CATASTOPHE,

INC. d/b/a  BMS CAT *(AGENT/CONTRACTOR)*

☐ O.   HILLMAN ENVIRONMENTAL GROUP, LLC.

*(AGENT/CONTRACTOR)*

☐ P.  GENERAL RE SERVICES CORP. *(OWNER/AGENT)*


☐ (13-73) 10 LIBERTY STREET

☐     LIBERTY STREET REALTY *(OWNER)*


☐ (13-74) 30 LIBERTY STREET

☐ A.   CHASE MANHATTAN BANK *(OWNER)*

☐ (13-75) 33 LIBERTY STREET

    ☐    VERIZON NEW YORK, INC. *(OWNER)*

☐ (13-76) 114 LIBERTY STREET

    ☐    WARWICK & CO. *(OWNER)*

☐ (13-77) 130 LIBERTY STREET (DEUTSCHE BANK BUILDING)

    ☐ A.   DEUTSCHE BANK TRUST CORPORATION *(OWNER)*

    ☐ B.   DEUTSCHE BANK TRUST COMPANY *(OWNER)*

    ☐ C.   BANKERS TRUST CORPORATION *(OWNER)*

    ☐ D.   DEUTSCHE BANK TRUST COMPANY AMERICAS *(OWNER)*

    ☐ E.   THE BANK OF NEW YORK TRUST COMPANY NA *(OWNER)*

    ☐ F.   BT PRIVATE CLIENTS CORP. *(OWNER)*

    ☐ G.   TISHMAN INTERIORS CORPORATION *(CONTRACTOR)*

    ☐ H.   TULLY CONTSRUCTION CO., INC. *(CONTRACTOR)*

    ☐ I.   TULLY INDUSTRIES *(CONTRACTOR)*

☐ (13-78) 377 LIBERTY STREET

    ☐ A   LIBERTY HOUSE CONDOMINIUM *(OWNER)*

☐ (13-79) 41 MADISON AVENUE

    ☐ A.   41 MADISON LP/RUDIN MGMT CO. *(OWNER/AGENT)*

☐ (13-80) 59 MAIDEN LANE

    ☐ A.   59 MAIDEN LANE ASSOCIATES, LLC *(OWNER)*

☐ (13-81) 80 MAIDEN LANE

    ☐ A.   BATTERY PARK CITY AUTHORITY *(OWNER)*

☐ (13-82) 90 MAIDEN LANE

    ☐ A.   MAIDEN 80/90 LLC *(OWNER)*
    ☐ B.   AM PROPERTY HOLDING CORP *(OWNER)*

☐ (13-83) 95 MAIDEN LANE

    ☐ A.   CHICAGO 4, L.L.C. *(OWNER)*
    ☐ B.   2 GOLD L.L.C., SUCCESSOR BY MERGER TO CHICAGO 4, L.L.C. *(OWNER)*

☐ (13-83-1) 125 MAIDEN LANE

    ☐ A.   125 MAIDEN LANE EQUITIES, LLC *(OWNER)*

☐ (13-84) MARRIOTT FINANCIAL CENTER HOTEL

    ☐ A.   HMC CAPITOL RESOURCES CORP. *(AGENT)*
    ☐ B.   HMC FINANCIAL CENTER, INC. *(OWNER)*
    ☐ C.   MARRIOTT HOTEL SERVICES, INC. *(AGENT)*
    ☐ D.   MK WEST STREET COMPANY *(AGENT)*
    ☐ E.   MK WEST STREET COMPANY, L.P. *(AGENT)*

☐ (13-85) 101 MURRAY STREET

    ☐ A.  ST. JOHN'S UNIVERSITY *(OWNER)*

☐ (13-86) 110 MURRAY STREET

    ☐ A.   THE BANK OF NEW YORK COMPANY, INC. *(OWNER)*

☐ B.   ONE WALL STREET HOLDINGS, LLC. *(OWNER)*

☐ (13-87) 26 NASSAU STREET (1 CHASE MANHATTAN BANK

☐ A.   J.P. MORGAN CHASE CORPORATION *(OWNER)*

☐ (13-88) 81 NASSAU STREET

☐ A.   SYMS CORP. *(OWNER)*

☐ (13-89) 4 NEW YORK PLAZA

☐ A.   MANUFACTURERS HANOVER TRUST COMPANY

*(OWNER)*

☐ (13-90) 102 NORTH END AVENUE

☐ A.   HARRAH'S OPERATING COMPANY, INC. *(OWNER/AGENT)*

☐ B.   HILTON HOTELS CORPORATION *(OWNER)*

☐ (13-91) PACE UNIVERSITY

☐     PACE UNIVERSITY *(OWNER)*

☐ (13-92) 75 PARK PLACE

☐ A.   RESNICK 75 PARK PLACE, LLC *(OWNER)*

☐ B.   JACK RESNICK & SONS, INC. *(AGENT)*

☐ (13-93) 299 PEARL STREET

☐     SOUTHBRIDGE TOWERS, INC. *(OWNER)*

☐ (13-94) 375 PEARL STREET

    ☐ A.   VERIZON COMMUNICATIONS, INC. *(OWNER)*

    ☐ B.   RICHARD WINNER *(AGENT)*

    ☐ C.   VERIZON NEW YORK, INC. *(OWNER)*

☐ (13-95) PICASSO PIZZERIA RESTAURANT

    ☐   CITY OF NEW YORK *(OWNER)*

☐ (13-96) 30 PINE STREET

    ☐ A.   JP MORGAN CHASE *(OWNER)*

    ☐ B.   JP MORGAN CHASE *(AGENT)*

☐ (13-97) 70 PINE STREET

    ☐ A.   AMERICAN INTERNATIONAL REALTY CORP. *(OWNER)*

    ☐ B.   AMERICAN INTERNATIONAL GROUP, INC. *(OWNER)*

    ☐ C.   AIG REALTY, INC. *(OWNER)*

☐ (13-98) 80 PINE STREET

    ☐ A.   80 PINE, LLC *(OWNER)*

    ☐ B.   RUDIN MANAGEMENT CO., INC. *(AGENT)*

☐ (13-99) P.S. 234 INDEPENDENCE SCHOOL

    ☐   SABINE ZERARKA *(OWNER)*

☐ (13-100) 30 ROCKEFELLER PLAZA

    ☐ A.  TISHMAN SPEYER PROPERTIES *(OWNER)*

    ☐ B.  V CUCINIELLO *(OWNER)*

☐ (13-101) 1-9 RECTOR STREET

    ☐ A.  50 TRINITY, LLC *(OWNER)*

    ☐ B.  BROADWAY WEST STREET ASSOCIATES LIMITED PARTNERSHIP *(OWNER)*

    ☐ C.  HIGHLAND DEVELOPMENT LLC *(OWNER)*

    ☐ D.  STEEPLECHASE ACQUISITIONS LLC *(OWNER)*

    ☐ E.  BLACK DIAMONDS LLC *(OWNER)*

    ☐ F.  88 GREENWICH LLC *(OWNER)*

☐ (13-102) 19 RECTOR STREET

    ☐ A.  BLACK DIAMONDS LLC *(OWNER)*

    ☐ B.  88 GREENWICH LLC *(OWNER)*

☐ (13-103) 40 RECTOR STREET

    ☐ A.  NEW YORK TELEPHONE COMPANY *(AGENT)*

☐ (13-104) 225 RECTOR PLACE

    ☐ A.  LIBERTY VIEW ASSOCIATES, L.P. *(OWNER)*

    ☐ B.  AMG REALTY PARTNERS, LP  *(OWNER)*

    ☐ C.  RELATED MANAGEMENT CO., LP *(AGENT)*

    ☐ D.  THE RELATED REALTY GROUP, INC. *(OWNER)*

☐ E.   THE RELATED COMPANIES, LP *(OWNER)*

☐ F.   RELATED BPC ASSOCIATES, INC. *(OWNER)*

☐ (13-105) 280 RECTOR PLACE (THE SOUNDING)

☐ A.   BROWN HARRIS STEVENS *(AGENT)*

☐ B.   THE RELATED COMPANIES, LP *(OWNER)*

☐ (13-106) 300 RECTOR PLACE (BATTERY POINTE)

☐ A.   BATTERY POINTE CONDOMINIUMS *(OWNER)*

☐ B.   RY MANAGEMENT *(AGENT)*

☐ (13-107) 377 RECTOR PLACE (LIBERTY HOUSE

☐ A.   MILFORD MANAGEMENT CORP. *(AGENT)*

☐ B.   MILSTEIN PROPERTIES CORP. *(OWNER)*

☐ C.   LIBERTY HOUSE CONDOMINIUM *(OWNER)*

☐ (13-108) 380 RECTOR PLACE   (LIBERTY TERRACE)

☐ A.   MILFORD MANAGEMENT CORP. *(OWNER)*

☐ B.   LIBERTY TERRACE CONDOMINIUM *(OWNER)*

☐ (13-109) 2 SOUTH END AVENUE (COVE CLUB)

☐ A.   COOPER SQUAER REALTY, INC. *(OWNER)*

☐ (13-110) 250 SOUTH END AVENUE (HUDSON VIEW EAST)

☐ A.   BATTERY PARK CITY AUTHORITY *(OWNER)*

☐ B.   HUDSON VIEW TOWERS ASSOCIATES *(OWNER)*

☐ C.   HUDSON VIEW EAST CONDOMINIUM *(OWNER)*

☐ D.   BOARD OF MANAGERS OF THE HUDSON VIEW EAST
        CONDOMINIUM *(OWNER)*

☐ E.   R Y MANAGEMENT CO., INC. *(AGENT)*

☐ F.   ZECKENDORF REALTY, LP, *(AGENT/OWNER)*

☐ G.   ZECKENDORF REALTY, LLC, *(AGENT/OWNER)*


☐ (13-111) 315 SOUTH END AVENUE

☐       THE CITY OF NEW YORK *(OWNER)*


☐ (13-112) 345 SOUTH END AVENUE (100 GATEWAY PLAZA)

☐ A.   EMPIRE STATE PROPERTIES, INC. *(OWNER)*

☐ B.   LEFRAK ORGANIZATION INC. *(OWNER)*


☐ (13-113) 355 SOUTH END AVENUE (200 GATEWAY PLAZA)

☐ A.   EMPIRE STATE PROPERTIES, INC. *(OWNER)*

☐ B.   LEFRAK ORGANIZATION INC. *(OWNER)*


☐ (13-114) 375 SOUTH END AVENUE (600 GATEWAY PLAZA)

☐ A.   EMPIRE STATE PROPERTIES, INC. *(OWNER)*

☐ B.   LEFRAK ORGANIZATION INC. *(OWNER)*

☐ (13-115) 385 SOUTH END AVENUE (500 GATEWAY PLAZA)

☐ A.   EMPIRE STATE PROPERTIES, INC. *(OWNER)*

☐ B.   LEFRAK ORGANIZATION INC. *(OWNER)*


☐ (13-116) 395 SOUTH END AVENUE  (400 GATEWAY PLAZA)

☐ A.   THE CITY OF NEW YORK *(OWNER)*

☐ B.   BATTERY PARK CITY AUTHORITY *(OWNER)*

☐ C.   HUDSON TOWERS HOUSING CO., INC. *(OWNER)*

☐ D.   EMPIRE STATE PROPERTIES, INC. *(OWNER)*

☐ E.   LEFRAK ORGANIZATION, INC. *(OWNER)*


☐ (13-117) 22 THAMES STREET

☐ A.   123 WASHINGTON, LLC (C/O THE MOINIAN GROUP)


☐ (13-118) 88 THOMAS STREET

☐     50 HUDSON LLC *(OWNER)*


☐ (13-119) TRINITY CHURCH

☐     RECTOR OF TRINITY CHURCH *(OWNER)*


☐ (13-120) 100 TRINITY PLACE (HIGH SCHOOL OF ECONOMICS AND FINANCE)

☐ A.   THAMES REALTY CO. *(OWNER)*

☐ B.   NEW YORK UNIVERSITY *(OWNER)*

☐ (13-121) 78-86 TRINITY PLACE (AMERICAN STOCK EXCHANGE)

    ☐ A.   AMERICAN STOCK EXCHANGE LLC *(OWNER)*

    ☐ B.   AMERICAN STOCK EXCHANGE CLEARING LLC *(OWNER)*

    ☐ C.   AMERICAN STOCK EXCHANGE REALTY ASSOCIATIES LLC *(OWNER)*

    ☐ D.   NATIONAL ASSOCIATION OF SECURITIES DEALERS *(OWNER)*

    ☐ E.   THE NASDAQ STOCK MARKET, INC *(OWNER)*

    ☐ F.   AMEX SEAT OWNERS ASSOCIATION, INC. *(OWNER)*

    ☐ G.   AMEX SPECIALISTS ASSOCIATION, INC. *(OWNER)*

    ☐ H.   AMEX COMMODITIES LLC *(OWNER)*

    ☐ I.   AMEX INTERNATIONAL INC. *(OWNER)*

    ☐ J.   AMEX INTERNATIONAL LLC *(OWNER)*

    ☐ K.   NEW YORK CITY INDUSTRIAL DEVELOPMENT AGENCY *(OWNER)*

    ☐ L.   NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION *(OWNER)*

    ☐ M.   NEW YORK CITY INDUSTRIAL DEVELOPMENT CORPORATION *(OWNER)*


☐ (13-122) 90 TRINITY PLACE

    ☐ A.   NEW YORK UNIVERSITY *(OWNER)*


☐ (13-123) TRINITY BUILDING

    ☐ A.   CAPITAL PROPERTIES, INC. *(AGENT)*

☐ B.   TRINITY CENTRE, LLC *(OWNER)*

☐ (13-124) 75 VARICK STREET AND 76 VARICK STREET

　☐ A.   NYC INDUSTRIAL DEVELOPMENT AGENCY *(OWNER)*

　☐ B.   TRINITY REAL ESTATE *(AGENT)*

☐ (13-125) 30 VESEY STREET

　☐ A.   SILVERSTEIN PROPERTIES *(OWNER)*

☐ (13-126) 1 WALL STREET

　☐ A.   THE BANK OF NEW YORK COMPANY, INC. *(OWNER)*

　☐ B.   ONE WALL STREET HOLDINGS LLC *(OWNER)*

　☐ C.   4101 AUSTIN BLVD CORPORATION (*OWNER*)

☐ (13-127) 11 WALL STREET (NEW YORK STOCK EXCHANGE, INC.)

　☐ A.   NYSE, INC. *(OWNER)*

　☐ B.   NYSE, INC. *(AGENT)*

☐ (13-128) 37 WALL STREET

　☐ A.   W ASSOCIATES LLC *(OWNER)*

☐ (13-129) 40 WALL STREET

　☐ A.   32-42 BROADWAY OWNER, LLC *(OWNER)*

　☐ B.   CAMMEBY'S MANAGEMENT CO., LLC *(AGENT)*

☐ (13-130) 45 WALL STREET

    ☐ A.   45 WALL STREET LLC *(OWNER)*

☐ (13-131) 60 WALL STREET AND 67 WALL STREET

    ☐ A.   DEUTSCHE BANK DBAB WALL STREET LLC *(OWNER)*

    ☐ B.   JONES LANG LASALLE *(AGENT)*

☐ (13-132) 63 WALL STREET

    ☐ A.   63 WALL, INC. *(OWNER)*

    ☐ B.   63 WALL STREET INC. *(OWNER)*

    ☐ C.   BROWN BROTHERS HARRIMAN & CO., INC. *(AGENT)*

☐ (13-133) 100 WALL STREET

    ☐ A.   100 WALL STREET COMPANY LLC *(OWNER)*

    ☐ B.   RECKSON CONSTRUCTION GROUP NEW YORK, INC.
        *(AGENT/CONTRACTOR)*

☐ (13-134) 111 WALL STREET

    ☐ A.   CITIBANK, N.A. *(OWNER)*

    ☐ B.   STATE STREET BANK AND TRUST COMPANY, AS OWNER
        TRUSTEE OF ZSF/OFFICE NY TRUST *(OWNER)*

    ☐ C.   111 WALL STREET LLC *(OWNER)*

    ☐ D.   230 CENTRAL CO., LLC *(OWNER)*

    ☐ E.   CUSHMAN & WAKEFIELD, INC. *(AGENT)*

☐ F.   CUSHMAN & WAKEFIELD 111 WALL, INC *(AGENT)*

☐ G.   CITIGROUP, INC. *(OWNER)*


☐ (13-135) 46 WARREN STREET

☐ A.   DAVID HELFER *(OWNER)*


☐ (13-136) 73 WARRAN STREET

☐ A   73 WARREN STREET LLP *(OWNER)*


☐ (13-137) 201 WARREN STREET (P.S. 89)

☐ A.   TRIBECA NORTH END, LLC *(OWNER)*

☐ B.   THE CITY OF NEW YORK *(OWNER)*

☐ C.   THE NEW YORK CITY DEPARTMENT OF EDUCATION *(OWNER)*

☐ D.   THE NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY *(OWNER)*


☐ (13-138) 130 WASHINGTON STREET

☐    HMC FINANCIAL CENTER, INC. *(OWNER)*


☐ (13-139) 55 WATER STREET

☐ A.   55 WATER STREET CONDOMINIUM *(OWNER)*

☐ B.   NEW WATER STREET CORP. *(OWNER)*


☐ (13-140) 160 WATER STREET

☐ A.   160 WATER STREET ASSOCIATES *(OWNER)*

☐ B.   G.L.O. MANAGEMENT, INC. *(AGENT)*

☐ C.   160 WATER ST. INC. *(OWNER)*

☐ (13-141) 199 WATER STREET

    ☐ A.   RESNICK WATER ST. DEVELOPMENT CO. *(OWNER)*

    ☐ B.   JACK RESNICK & SONS INC. *(AGENT)*

☐ (13-142) 200 WATER STREET

    ☐ A.   NEW YORK UNIVERSITY *(OWNER)*

    ☐ B.   NEW YORK UNIVERSITY REAL ESTATE CORPORATION *(OWNER)*

    ☐ C.   127 JOHN STREET REALTY LLC *(OWNER)*

    ☐ D.   ROCKROSE DEVELOPMENT CORP. *(OWNER)*

☐ (13-143) 3 WEST 57TH STREET (THE WHITEHALL BUILDING)

    ☐ A.   EL-KAM REALTY CO. *(OWNER)*

☐ (13-144) 50 WEST STREET

    ☐ A.   CAPMARK FINANCE, INC. *(OWNER)*

☐ (13-145) 90 WEST STREET (WEST STREET BUILDING)

    ☐ A.   FGP 90 WEST STREET, INC. *(OWNER)*

    ☐ B.   KIBEL COMPANIES *(OWNER)*

☐ (13-146) 140 WEST STREET (VERIZON BUILDING)

    ☐A.   VERIZON NEW YORK, INC. *(OWNER)*

    ☐B.   VERIZON PROPERTIES, INC. *(OWNER)*

    ☐C.   VERIZON COMMUNICATIONS, INC. *(OWNER)*

    ☐D.   HILLMAN ENVIRONMENTAL GROUP, LLC.

        *(OWNER'S AGENT/CONTRACTOR)*


☐ (13-147) 30 WEST BROADWAY

    ☐A.   THE CITY UNIVERSITY OF NEW YORK *(OWNER)*

    ☐B.   THE CITY OF NEW YORK *(OWNER)*


☐ (13-148) 100 WILLIAM STREET

    ☐A.   WU/LIGHTHOUSE *(OWNER)*

    ☐B.   LIGHTHOUSE REAL ESTATE, LLC *(AGENT)*


☐ (13-149) 123 WILLIAM STREET

    ☐A.   WILLIAM & JOHN REALTY, LLC *(OWNER)*

    ☐B.   AM PROPERTY HOLDING *(AGENT)*


☐ (13-150) 40 WORTH

    ☐A.   LITTLE 40 WORTH ASSOCIATES, LLC *(AGENT)*

    ☐B.   NEWMAN AND AMP COMPANY REAL ESTATE *(AGENT)*


☐ (13-151) 125 WORTH

    ☐A.   CITY WIDE ADMINISTRATIVE SERVICES *(OWNER)*

☐ (13-152) 200 LIBERTY STREET (ONE WORLD FINANCIAL CENTER)

    ☐ A.   BATTERY PARK CITY AUTHORITY *(OWNER)*

    ☐ B.   BROOKFIELD PROPERTIES CORPORATION *(OWNER)*

    ☐ C.   BROOKFIELD FINANCIAL PROPERTIES, LP *(OWNER)*

    ☐ D.   BROOKFIELD FINANCIAL PROPERTIES, INC. *(OWNER)*

    ☐ E.   BROOKFIELD PROPERTIES HOLDINGS INC. *(OWNER)*

    ☐ F.   BROOKFIELD PARTNERS, LP *(OWNER)*

    ☐ G.   WFP TOWER A CO. *(OWNER)*

    ☐ H.   WFP TOWER A CO. L.P. *(OWNER)*

    ☐ I   WFP TOWER A. CO. G.P. CORP. *(OWNER)*

    ☐ J.   TUCKER ANTHONY, INC. *(AGENT)*

    ☐ K.   BLACKMON-MOORING-STEAMATIC CATASTOPHE,
              INC. d/b/a  BMS CAT *(CONTRACTOR/AGENT)*

☐ (13-153) 225 LIBERTY STREET (TWO WORLD FINANCIAL CENTER)

    ☐ A.   BATTERY PARK CITY AUTHORITY *(OWNER)*

    ☐ B.   BROOKFIELD PROPERTIES CORPORATION *(OWNER)*

    ☐ C.   BROOKFIELD PARTNERS, L.P. *(OWNER)*

    ☐ D.   BROOKFIELD PROPERTIES HOLDINGS INC. *(OWNER)*

    ☐ E.   BROOKFIELD FINANCIAL PROPERTIES, L.P. *(OWNER)*

    ☐ F.   BROOKFIELD FINANCIAL PROPERTIES, INC. *(OWNER)*

    ☐ G.   MERRILL LYNCH & CO, INC. *(OWNER)*

    ☐ H.   WESTON SOLUTIONS, INC. *(AGENT/CONTRACTOR)*

    ☐ I.   GPS ENVIRONMENTAL CONSULTANTS, INC.

*(AGENT/CONTRACTOR)*

☐J.   INDOOR ENVIRONMENTAL TECHNOLOGY, INC.
*(AGENT/CONTRACTOR)*

☐K.   BLACKMON-MOORING-STEAMATIC CATASTOPHE,
INC. d/b/a  BMS CAT *(AGENT/CONTRACTOR)*

☐L.   STRUCTURE TONE, (UK) INC. *(CONTRACTOR)*

☐M.   STRUCTURE TONE GLOBAL SERVICES, INC
*(CONTRACTOR)*

☐N.   ENVIROTECH CLEAN AIR, INC. *(CONTRACTOR)*

☐O.   ALAN KASMAN DBA KASCO *(CONTRACTOR)*

☐P.   KASCO RESTORATION SERVICES CO. *(CONTRACTOR)*

☐Q.   NOMURA HOLDING AMERICA, INC. *(OWNER)*

☐R.   NOMURA SECURITIES INTERNATIONAL, INC. *(OWNER)*

☐S.   WFP TOWER B HOLDING CO., LP *(OWNER)*

☐T.   WFP TOWER B CO., G.P. CORP. *(OWNER)*

☐U.   WFP TOWER B CO. L.P. *(OWNER)*

☐V.   TOSCORP. INC. *(OWNER)*

☐W.   HILLMAN ENVIRONMENTAL GROUP, LLC.
*(AGENT/CONTRACTOR)*

☐X.   ANN TAYLOR STORES CORPORATION *(OWNER)*


☐ (13-154) 200 VESEY STREET (THREE WORLD FINANCIAL CENTER)

☐A.   BFP TOWER C CO. LLC. *(OWNER)*

☐B.   BFP TOWER C MM LLC. *(OWNER)*

☐C.   WFP RETAIL CO. L.P. *(OWNER)*

☐D.   WFP RETAIL CO. G.P. CORP. *(OWNER)*

☐E.   AMERICAN EXPRESS COMPANY *(OWNER)*

☐F.   AMERICAN EXPRESS BANK , LTD *(OWNER)*

☐G.   AMERICAN EXPRESS TRAVEL RELATED SERVICES
COMPANY, INC. *(OWNER)*

☐H.   LEHMAN BROTHERS, INC. *(OWNER)*

☐I.   LEHMAN COMMERCIAL PAPER, INC. *(OWNER)*

☐J.   LEHMAN BROTHERS HOLDINGS INC.  *(OWNER)*

☐K.   TRAMMELL CROW COMPANY *(AGENT)*

☐L.   BFP TOWER C CO. LLC *(OWNER)*

☐M.   MCCLIER CORPORATION *(AGENT)*

☐N.   TRAMMELL CROW CORPORATE SERVICES, INC. *(AGENT)*

☐O.   BLACKMON-MOORING-STEAMATIC CATASTOPHE,
INC. d/b/a  BMS CAT *(AGENT/CONTRACTOR)*


☐ (13-155) 250 VESEY STREET (FOUR WORLD FINANCIAL CENTER)

☐A.   BATTERY PARK CITY AUTHORITY *(OWNER)*

☐B.   BROOKFIELD PROPERTIES CORPORATION *(OWNER)*

☐C.   BROOKFIELD FINANCIAL PROPERTIES, LP. *(OWNER)*

☐D.   BROOKFIELD FINANCIAL PROPERTIES, INC. *(OWNER)*

☐E.   BROOKFIELD PROPERTIES HOLDINGS, INC. *(OWNER)*

☐F.   BROOKFIELD PARTNERS, LP *(OWNER)*

☐G.   WFP TOWER D CO. L.P. *(OWNER)*

☐I.   H.WFP TOWER D CO., G.P. CORP *(OWNER).*

☐J.   WFP TOWER D HOLDING I G.P. CORP. *(OWNER)*

☐K.   WFP TOWER D HOLDING CO. I L.P. *(OWNER)*

☐L.   WFP TOWER D HOLDING CO. II L.P. *(OWNER)*

☐ M.   MERRILL LYNCH & CO, INC. *(OWNER)*

☐ N.   WESTON SOLUTIONS, INC. *(CONTRACTOR/AGENT)*

☐ O.   GPS ENVIRONMENTAL CONSULTANTS, INC.
*(CONTRACTOR/AGENT)*

☐ P.   INDOOR ENVIRONMENTAL TECHNOLOGY, INC.
*(CONTRACTOR/AGENT)*

☐ Q.   BLACKMON-MOORING-STEAMATIC CATASTOPHE,
NC. d/b/a  BMS CAT *(CONTRACTOR/AGENT)*

☐ R.   STRUCTURE TONE, (UK) INC. *(CONTRACTOR/AGENT)*

☐ S.   STRUCTURE TONE GLOBAL SERVICES, INC
*(CONTRACTOR/AGENT)*

☐ T.   ENVIROTECH CLEAN AIR, INC. *(CONTRACTOR/AGENT)*

☐ U.   ALAN KASMAN DBA KASCO *(CONTRACTOR/AGENT)*

☐ V.   KASCO RESTORATION SERVICES CO.
*(CONTRACTOR/AGENT)*

☐ (13-156) ZEN RESTAURANT

☐     CITY OF NEW YORK *(OWNER)*

14. At all times herein mentioned, the Defendant was a corporation doing business in the State of New York.

15. At all times herein mentioned, the Defendant was a domestic corporation duly existing under and by virtue of the laws of the State of New York.

16. That at all times herein mentioned, the Defendant was a foreign corporation duly authorized to conduct business in the State of New York.

17. That at all times herein mentioned, the Defendant, was a foreign corporation conducting business in the State of New York.

18. That at all times herein mentioned, the Defendant, committed a tortious act within the State of New York, causing injury to a person within the State of New York, and said Defendant, expects or should reasonably expect the act to have consequences in the State of New York.

19. That at all times herein mentioned, the Defendant, was a non-domiciliary of the State of New York, and has transacted business within the State of New York.

20. That at all times herein mentioned, the Defendant, was a non-domiciliary of the State of New York and has committed a tortious act without the State of New York, causing injury to a person within the State of New York and said Defendant solicited business or engaged in any other persistent course of conduct, or derived a substantial revenue from goods used or services rendered in the State of New York.

21. That at all times herein mentioned, the Defendant, was a non-domiciliary of the State of New York, and has committed a tortious act within the State of New York, causing injury to a person within the State of New York, and said Defendant, expects or should reasonably expect the act to have consequences in the State of New York.

22. That at all times herein mentioned, the Defendant, advertised and/or caused to be advertised in newspapers and/or other sources readily available to the general public, in the State of New York, announcements and/or advertisements inviting and inducing the general public to visit and be on and about the Defendant's premises or place of business as aforementioned.

23. That at all times herein mentioned, the Defendant, was a Limited Liability Corporation doing business in the State of New York.

24. That at all times herein mentioned, the Defendant, was a participant in a Joint Venture doing business in the State of New York.

25. That at all times herein mentioned, the Defendant, was a Condominium Association doing business in the State of New York.

26. That at all times herein mentioned, the Defendant, was a Board of Directors of a Condominium Association doing business in the State of New York.

27. That at all times herein mentioned, the Defendant, was a Limited Liability Partnership doing business in the State of New York.

28. That at all times herein mentioned, the Defendant, was a partnership conducting business in the State of New York.

29. That at all times herein mentioned, the Defendant, was a municipal corporation.

30. That at all times herein mentioned, the Defendant, was a public benefit corporation.

31. That at all times herein mentioned, the Defendant, was a public authority organized under the laws of the State of New York.

32. That at all times herein mentioned, the Defendant, was conducting business in the State of New York.

33. That at all times herein mentioned, the Defendant, was conducting business in the State of New York and subject to its laws and the laws of any agency and or subdivision of the government.

**V.**

**AS AND FOR A FIRST CAUSE OF ACTION
PURSUANT TO LABOR LAW SECTION 200**

34. At all relevant times, Defendant was the owner, and or deemed to be acting in such capacity, of certain premises and buildings located in lower Manhattan at the "locations."

35. At all relevant times, the Defendant was the agent of the owner, and or deemed to be acting in such a capacity, said owner who owned certain premises and buildings located in lower Manhattan at the "locations,"

36. At all relevant times, the Defendant was the contractor of the owner, and or deemed to be acting in such a capacity, said owner who owned certain premises and buildings located in lower Manhattan at the "locations."

37. At all relevant times, the Defendant was the agent of the contractor of the owner, and or deemed to be acting in such a capacity, said owner who owned certain premises and buildings located in lower Manhattan at the "locations."

38. At all relevant times, Defendants leased certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

39. At all relevant times, Defendants operated certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

40. At all relevant times, Defendants, their servants, agents and/or employees, maintained certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

41. At all relevant times, Defendants, their servants, agents and/or employees, managed certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

42. At all relevant times, Defendants, their servants, agents and/or employees, controlled certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

43. At all relevant times, it was the duty of the Defendants, their servants, agents and/or employees, to operate certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable condition, and repair.

44. At all relevant times, it was the duty of the Defendants, their servants, agents and/or employees, to maintain certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable condition, and repair.

45. At all relevant times, it was the duty of the Defendants, their servants, agents and/or employees, to manage certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable condition, and repair.

46. At all relevant times, it was the duty of the Defendants, their servants, agents and/or employees, to control certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable condition, and repair.

47. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, commenced certain operations, labor and services, such as clean-up, cleaning, debris removal, construction, demolition, excavation, and/or repair, (hereinafter referred to as the "Work"), at the certain

premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

48. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, entered into an agreement, contract or subcontract relative to the "Work," to be performed at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

49. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, entered into an agreement, contract or subcontract with Plaintiff's employer relative to the "Work," to be performed at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

50. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, entered into an agreement, contract or subcontract with other entities that retained Plaintiff's employer relative to the "Work," to be performed at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

51. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, entered into an agreement, contract or subcontract with Plaintiff's employer to supervise Plaintiff's employer relative to the "Work," to be performed at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

52. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, entered into an agreement, contract or subcontract with other entities to supervise Plaintiff's employer relative to the "Work," to be performed at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

53. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, entered into an agreement, contract or subcontract with other entities to supervise said entities relative to the "Work," to be performed at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

54. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, obtained a permit to perform the "Work" at certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

55. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, performed the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

56. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, directed the work site, the "Work" and/or the apparatus provided and utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

57. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, maintained the work site, the "Work" and/or the apparatus provided and utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

58. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, supervised the work site, the "Work" and/or the apparatus provided and utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

59. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, managed the work site, the "Work" and/or the apparatus provided and utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

60. On or about and/or following September 11, 2001, Defendants, their servants, agents, lessees, permittees, contractors and/or employees, controlled the work site, the "Work" and/or the apparatus provided and utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

61. At all relevant times, it was the duty of Defendant, their servants, agents, lessees, permittees, contractors and/or employees, to maintain and/or supervise and/or manage and/or control the work site, the "Work" and/or the apparatus provided and

utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable condition and repair.

62. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, monitored the air quality at the said work site, and ignored the findings indicative of toxic contamination and/or improperly interpreted said findings in connection with the "Work" on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

63. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, improperly monitored the air quality at the said work site in connection with the "Work" on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

64. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to monitor the air quality at the said work site in connection with the "Work" on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

65. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to obtain air quality monitoring independent of any monitoring by any City, State, or Federal agency at the said work site in connection with the "Work" on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

66. At all relevant times, it was the duty of Defendant, their servants, agents, lessees, permittees, contractors and/or employees, to properly monitor the air quality at the work site, at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable manner, utilizing appropriate equipment for such and to maintain such in proper working and calibrated condition.

67. At all relevant times, it was the duty of Defendant, their servants, agents, lessees, permittees, contractors and/or employees, to properly obtain air quality monitoring independent of any monitoring by any City, State, or Federal Agency at the work site, at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," in reasonably safe and suitable manner, utilizing appropriate equipment for such and to maintain such in proper working and calibrated condition.

68. At all relevant times, in accordance with the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, it was the duty of the defendant, its servants, agents, lessees, permittees, contractors and/or employees, to provide for the safety, protection and well-being of persons lawfully working and performing the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

69. At all relevant times, in accordance with the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, it was the duty of Defendant, its servants, agents, lessees, permittees, contractors and/or employees, to provide a reasonably safe place to work for persons lawfully

performing the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

70. At all relevant times, in accordance with the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, it was the duty of Defendant, its servants, agents, lessees, permittees, contractors and/or employees, to provide a reasonably safe place to work for persons lawfully performing the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations" and to prevent Plaintiff from inhaling, ingesting, coming into contact with and/or absorb said toxins, contaminants and other harmful airborne products and/or contaminants at said "locations."

71. At all relevant times, in accordance with the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, it was the duty of Defendants, their servants, agents, lessees, permittees, contractors and/or employees, to provide, furnish and/or ensure the use of safe, suitable and adequate equipment, safety devices and/or apparatus for persons lawfully performing the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

72. At all relevant times, in accordance with the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, it was the duty of Defendants, their servants, agents, lessees, permittees, contractors and/or employees, to provide, furnish and/or ensure the use of safe, suitable and adequate equipment, safety devices and/or apparatus including appropriate respirators and

safety clothing for persons lawfully performing the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

73. On or about and/or following September 11, 2001, and or as specified in the Plaintiff-Specific Complaint by Adoption, the  Plaintiff was lawfully present at certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

74. On or about and/or following September 11, 2001, and or as specified in the Plaintiff-Specific Complaint by Adoption, the Plaintiff participated in the clean-up, construction, demolition, excavation, and/or repair operation efforts at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations" in the course and discharge of his/her employment duties.

75. On or about and/or following September 11, 2001, and/or as specified in the Plaintiff-Specific Complaint by Adoption, Plaintiff was exposed to toxins, contaminants and other harmful airborne products at the buildings and/or place of business known as and/or located at the "locations" during the clean-up, construction, demolition, excavation, and/or repair operations.

76. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, performed the "Work" in a negligent and careless manner, causing injury to the Plaintiff.

77. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, utilized apparatus provided in connection with the "Work" in a negligent and careless manner causing injury to the Plaintiff.

78. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to provide the Plaintiff with the proper equipment in order to protect him/her from the effects of toxic smoke, dust and other harmful products and/or other airborne contaminants present at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

79. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to provide the Plaintiff with the proper equipment including appropriate respirators and safety clothing in order to protect him/her from the effects of toxic smoke, dust and other harmful products and/or other airborne contaminants present at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

80. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to provide the Plaintiff with the proper fitting equipment in order to protect him/her from the effects of toxic smoke, dust and other harmful products and/or other airborne contaminants present at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

81. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to properly fit test and continue to fit test any equipment which may have been provided to Plaintiff in order to protect him/her from the effects of toxic smoke, dust and other harmful

products and/or other airborne contaminants present at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

82. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to monitor the Plaintiff to ensure the use and/or proper use of equipment in order to protect him/her from the effects of toxic smoke, dust and other harmful products and/or other airborne contaminants present at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

83. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to monitor the Plaintiff to ensure the use and/or proper use of equipment including appropriate respirators and safety clothing in order to protect him/her from the effects of toxic smoke, dust and other harmful products and/or other airborne contaminants present at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

84. On or about and/or following September 11, 2001, Defendants, their servants, agents, permittees, contractors and/or employees, failed to properly monitor the air quality at the said work site on the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

85. On or about and/or following September 11, 2001, there existed dangerous, defective, hazardous, unguarded, unsupervised, unprotected, uncontained, and

unsafe toxic conditions at the said work site at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

86. At all relevant times, Defendants, their servants, agents, permittees, contractors and/or employees, failed to maintain the said work site, the "Work" and/or the apparatus provided and utilized in connection with the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations" in reasonably safe and suitable condition and repair.

87. The Defendants negligently collected information necessary for the enforcement of health and safety laws, rules and regulations at the "locations." The Defendants were responsible to inspect and /or negligently inspected their work and the work site "locations" to determine safety conditions and enforce compliance with providing personal protective equipment.

88. The Defendants accepted responsibility for, and had a non-delegable legal duty to enforce and comply with all applicable Occupational Safety and Health Administration (OSHA) standards and the New York State Labor Law.

89. The Defendants were responsible for the safety and health of all workers and/or occupants lawfully present at the "locations."

90. The Defendants owed a legal, non-delegable duty to comply with all federal, state and local, laws, statues, standards, regulations, codes, and the ensure that workers were provided with a safe and healthy work environment.

91. The Defendants were required to comply fully with OSHA's Respiratory protection Standard, 29 CFR 1910.134 and 29 CFR 1926.103, and OSHA standards as would

any employer who was performing work in an emergency or non-emergency situation.

92. At all relevant times, Defendants, their servants, agents, permittees, contractors and/or employees, were required to comply with and failed to comply with and violated those statutes, codes, ordinances, rules and regulations, in such cases made and provided, the New York Code of Rules and Regulations, 12 NYCRR 23, inclusive of Sections 23-1.7(g), 23-1.8(b), and 12 NYCRR 12 inclusive of Sections 12-1.4(a)(b), 12-1.5(a)(b)(c), 12-1.6(a)(b), 12-1.9(a)(b)(d), 12-1.10(a)(b), and 12-3.1 as otherwise not set forth herein to be more specifically set forth at a later date.

93. At all times during the "work" and debris removal, compliance with applicable labor, health, safety and environmental laws and regulations, including, but not limited to, New York State Labor Law §200 and OSHA 29 CFR 1910.132, OSHA 29 CFR 1962 and 12 NYCRR 23 et seq., 12 NYCRR 12 et seq., was not discretionary, but mandatory.

94. The Defendants violated 12 NYCRR 23-1.5(a) in that: all places where workers or persons are suffered or permitted to perform work of any kind in construction, demolition or excavation operations shall be so constructed, equipped , arranged, operated and conducted as to provide reasonable and adequate protection for the lives, health and safety of such persons as well as of persons lawfully frequenting the area of such activity. To this end, all the Contractors, employers, owners, contractors and their agents and other persons are obligated by law to provide safe working conditions, personal protective equipment and safe places to work for persons employed in construction, demolition or excavation operations and to

protect persons lawfully frequenting the areas of such activity and shall provide or cause to be provided the working conditions, safety devices, types of construction , methods of demolition and of excavation and the materials, means, methods and procedures required by this part. No employer shall suffer or permit an employee to work under working conditions which are not in compliance with the provisions of this Part or to perform any act prohibited by any provisions of this Part.

95. Furthermore, the defendants violated the requirements of 12 NYCRR 23-1.5(b) regarding the general requirements of competency, in that for the performance of work required by this Part (rule) to be done by or under the supervision of a designated person, an employer shall designate as such person only such an employee as a reasonable and prudent man experienced in construction, demolition or excavation work would consider competent to perform such work.

96. The Defendants violated 12 NYCRR 23-1.8 regarding personal protective equipment, particularly, subsection (b) regarding respirators as this subsection requires an employer to provide appropriate respiratory protection. Such respirator shall be approved for the type of operation for which it is to be used and for the particular air contaminant present. The Defendants also failed to ensure compliance at the worksite with applicable provisions of the Industrial Code, including §23-2.1(b).

97. At all relevant times, in violation of the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, Defendants, their servants, agents, permittees, contractors and/or employees, failed to provide for the safety, protection and well-being of persons lawfully performing

the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," including the Plaintiff.

98. At all relevant times, in violation of the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, Defendants, their servants, agents, permittees, contractors and/or employees failed to provide a reasonably safe place to work for persons lawfully performing clean-up, construction, demolition, excavation, and/or repair operations in performance of the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," including the Plaintiff.

99. At all relevant times, in violation of the Labor Law of the State of New York and other applicable city, state and federal statutes, law, rules and regulations, Defendants, their servants, agents, permittees, contractors and/or employees, failed to provide, furnish and/or ensure the use of safe, suitable and adequate equipment, protective devices and/or apparatus for persons lawfully performing clean-up, construction, demolition, excavation, and/or repair operations in performance of the "Work" at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," including the Plaintiff.

100. The Defendants had obligations under Section 200 of the Labor Law inclusive of their status or knowledge that:

    a. they were the owners, contractors, general contractors or their agents, and or deemed in such capacity, for the operations at the "locations;" and/or

    b. they had actual or constructive notice of the dangerous condition of the site, as set forth in this Complaint;

101.  The Defendants violated their duty under Section 200 of the Labor Law by failing to provide a reasonably safe place to work for persons lawfully performing the work at the "locations." Among other things, the Defendants failed to ensure:

a)  that the Plaintiffs were provided adequate personal protective equipment, including but not limited to: protective clothing, masks, respirators, and goggles;

b)  that the Plaintiffs were provided other necessary work equipment, safety devices, and/or apparatus, as well as cleaning supplies and decontamination equipment;

c)  adequate workplace safety rules-including rules requiring the use of personal protective equipment –were issued, enforced, and complied with;

d)  adequate monitoring air quality at the "locations" before, during and after the commencement of the Plaintiff's work at the site was performed;

e)  that the Plaintiffs were notified of the dangerous substances in the air, dust, and on the surfaces at the "locations";

f)  that atmospheric contamination was minimized or avoided;

g)  that effective engineering controls were implemented at the "locations"

h)  that the conditions at the "locations" and/or the Plaintiffs' particular work areas therein were subject to appropriate safety surveillance and/or inspection.

102.  As a result of the Defendants' violation of Section 200 of the Labor Law, the Plaintiffs were exposed to dangerous substances and suffered injuries, as set forth in this Complaint.

103.  Defendants knew or should have known that the Plaintiffs' exposure to dangerous substances, would detrimentally affect the safety and/or health of Plaintiffs, as adequately monitored.

104.  At all times relevant, Plaintiff performed services and was involved in the clean-up, construction, demolition, excavation, and/or repair operations, including clean-up and removal of toxins at the referenced "locations" herein.

105.  On and after certain dates, commencing with September 11, 2001, and/or as specified within the Plaintiff-Specific Complaint by Adoption, Plaintiff worked at the buildings and/or place of business known as and/or located at the "locations."

106.  Plaintiff worked on or about and/or after September 11, 2001, and/or as specified within the Plaintiff-Specific Complaint by Adoption, on multiple days, through such date as specified within the Plaintiff-Specific Complaint by Adoption, or such dates as it may be determined that such activities ceased.

107.  Plaintiff breathed in, ingested, came into contact with and/or absorbed said toxins, contaminants and other harmful airborne products during the entire time he/she performed clean-up, construction, demolition, excavation, and/or repair operations and worked at the aforementioned "locations," thus sustaining injury during the entire period of his/her employment activities at said locations.

108.  Plaintiff, due to a manifestation of symptoms, on such dates as may be specified in the Plaintiff-Specific Complaint by Adoption, and subsequently, received medical

diagnostic testing, resulting in findings and/or a diagnosis of such injuries as specified in the Plaintiff-Specific Complaint by Adoption and/or as such may in the future develop.

109.  Plaintiff worked at the aforementioned "locations," for the approximate following periods of time (all dates referenced refer to "beginning the week of..." unless otherwise specified) for employers as referenced): such as may be specified on the Plaintiff-Specific Complaint by Adoption.

110.  Said exposures and the resulting injuries to the Plaintiff were caused by reason of the carelessness, negligence, wanton and willful disregard on the part of the Defendants, which was in no way contributed to by the Plaintiff.

111.  By reason of the foregoing, the Plaintiff was, at all relevant times, exposed to toxins, contaminants and harmful products and/or other harmful airborne products such as fiberglass, glass, silica, asbestos, lead, benzene, organic matter, and other hazardous chemicals, substances and elements at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations."

112.  In consequence of the afore-described exposures to toxins, contaminants, and harmful products and/or their harmful airborne products at the certain premises and buildings, or a portion thereof, located in lower Manhattan at the "locations," the Plaintiff sustained physical and other injuries.

113.  In consequence of said exposures as aforementioned, the Plaintiff was seriously and permanently injured.

114.  This action falls within one or more of the exceptions set forth in CPLR §1602.

115.  Pursuant to CPLR Section 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants owed the Plaintiff a non-delegable duty of care.

116.  Pursuant to CPLR Section 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants acted with reckless disregard for the safety of others.

117.  Pursuant to CPLR Section 1602(2)(iv), the Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that said Defendants are vicariously liable for the negligent acts and omissions of each other and/or others who caused or contributed to the Plaintiff's damages.

118.  Pursuant to CPLR Section 1602(11), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

119.  Pursuant to CPLR Section 1602(8), Defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that Defendants should here be held liable pursuant to Article 10 of the Labor Law.

120.   That, where applicable, and with respect to entities which are Municipalities or Public Authorities, or as otherwise alleged in a Plaintiff-Specific Complaint by Adoption, a Notice of Claim has been filed.

121.   That, where applicable, and with respect to entities which are Municipalities or Public Authorities, or as otherwise alleged in a Plaintiff-Specific Complaint by Adoption, an application has been made to the Court with respect to the filing of a Notice of Claim, the specifics of which are enunciated in the Plaintiff-Specific Complaint by Adoption.

122.   That said Notice of Claim, was in writing, sworn to by the Plaintiff containing the name and post office address of the Plaintiff and Plaintiff's attorney, the nature of the claim, the time, when, the place where and the manner by which the claim arose, the items of damage and the injuries claimed to have been sustained, and or as otherwise prescribed by statute, to be served upon the defendant, by delivering a copy thereof to the person designated by law as a person to whom such claims may be served.

123.   That any municipal pre-suit oral examination of the Plaintiff, if requested in compliance with any applicable statute has been held, and/or will be held in accordance with same and/or in a timely fashion, if requested, pending disposition of the above referenced application.

124.   That, where applicable, the requirements of GML § 50-e have been met.

125.   That at least 30 days have elapsed since the service of the notice of claim and that adjustment or payment has been neglected or refused.

126. That the provision of GML 50-e have been complied with and 30 days have elapsed since the service of such notice and adjustment or payment thereon has been neglected or refused.

127. That the provisions of GML 50-e have been complied with and at least 30 days have elapsed since the claim was presented to the entity, and that said entity has neglected or refused to make adjustment or payment thereof.

128. That the notice of claim requirements pursuant to GML 50-e have been complied with and 30 days have elapsed since the notice of claim was served and the entity has neglected or refused to pay or adjust the matter.

129. That all conditions and requirements precedent to the commencement of this action have been complied with, and/or application has been made to this Court, for relief in lieu of same and/or regarding same.

130. Where applicable, that a notice of claim was served upon the entity, as specified in the Plaintiff Specific Complaint by Adoption within 90 days of the statutory date of accrual.

131. Where applicable, that a notice of claim was served upon the entity, as specified in the Plaintiff Specific Complaint by Adoption within 10 months of the statutory date of accrual.

132. That the action is being commenced within one year and ninety days of the date of accrual.

133. That the action is being commenced within one year and thirty days of the date of accrual.

134. That the action is being commenced within one year of the date of accrual.

135.  That the action is being commenced within two years of the date of accrual.

136.  That the action is being commenced within three years of the date of accrual.

137.  The within claim, has been and is being commenced and this action has been started within one year and ninety days, after the happening of the event upon which the claim is based, and/or within one year and ninety days of the date of accrual, and/or within one year and ninety days of the injury diagnosis, and/or within the applicable period as per the applicable Statute for toxic exposure.

138.  The within claim, has been and is being commenced and this action has been started within one year and thirty days, after the happening of the event upon which the claim is based, and/or within one year and thirty days of the date of accrual, and/or within one year and thirty days of the injury diagnosis, and/or within the applicable period as per the applicable Statute for toxic exposure.

139.  The within claim, has been and is being commenced and this action has been started within one year, after the happening of the event upon which the claim is based, and/or within one year of the date of accrual, and/or within one year of the injury diagnosis, and/or within the applicable period as per the applicable Statute for toxic exposure.

140.  That where applicable, and in the case of a death, the within claim and cause of action for wrongful death, has been and is being commenced and this action has been started within two years of the date of such death.

141.  The within claim, has been and is being commenced and this action has been started within the applicable period, as specified within the Plaintiff Specific Complaint by Adoption, after the happening of the event upon which the claim is

based, and/or within the applicable period from date of accrual, and/or within the applicable period, as specified within the Plaintiff Specific Complaint by Adoption, and as per the applicable Statute for toxic exposure.

142. By reason of the foregoing, the Plaintiff sustained severe and permanent personal injury and/or disability and will be permanently caused to suffer pain, suffering, inconvenience and other effects of such injuries which included conscious pain and suffering and/or which may result in the wrongful death of the Plaintiff including the fear of same, all without any negligence on the part of the plaintiff in contribution thereof. In addition, the Plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and the plaintiff has suffered and will necessarily suffer additional loss of time and earnings from employment.

143. By reason of the foregoing, the Plaintiff claims damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00), and or as determined by a Jury or this Court,  together with costs and disbursements and interest from the "date of accident" until collection of judgment, or as otherwise ordered.


## VI.

## AS AND FOR A SECOND CAUSE OF ACTION PURSUANT TO LABOR LAW SECTION 241(6)


144. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the First Cause of Action, with the same force and effect as if fully set forth at length herein.

145. The Defendants, at all relevant times, had a non-delegable duty under Labor Law §241(6) of the State of New York, to ensure that all areas in which construction, excavation or demolition work was being performed were so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

146. The Defendants violated their obligations under Section 241(6) of the Labor Law by failing to ensure that persons frequenting the premises or performing the work at the "locations," were provided with a worksite that was so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to such persons. As a result, the Plaintiff was exposed to toxins, contaminants and other harmful products and was injured.

147. By reason of the foregoing, the Plaintiff claims damaged in the sum of TWENTY MILLION DOLLARS ($20,000,000.00), and or as determined by a Jury or this Court, together with costs and disbursements and interest from the "date of accident" until collection of judgment, or as otherwise ordered.

## VII.

### AS AND FOR A THIRD CAUSE OF ACTION
### BASED UPON COMMON LAW NEGLIGENCE

148. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the First and Second Causes of Action, with the same force and effect as if fully set forth at length herein.

149. The aforesaid exposure and the resulting injuries sustained by the Plaintiff were caused by the negligence, gross negligence, and recklessness of the Defendants herein, without the Plaintiff contributing thereto.

150. By reason of the foregoing, the Plaintiff claims damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00), and or as determined by a Jury or this Court, together with costs and disbursements and interest from the "date of accident" until collection of judgment, or as otherwise ordered.

## VIII.

**AS AND FOR A FOURTH CAUSE OF ACTION, ON BEHALF OF DERIVATIVE PLAINTIFF, THE SPOUSE OF THE INJURED PLAINTIFF, HEREIN, WHEREIN HE/SHE SUSTAINED DAMAGES AS A RESULT OF INJURIES SUSTAINED BY INJURED PLAINTIFF DUE TO DEFENDANTS NEGLIGENCE AND STATUTORY VIOLATIONS AND AS OTHERWISE AFOREMENTIONED**

151. Derivative Plaintiff, repeat, reiterate and re-allege such and every allegation contained in the First, Second and Third Causes of Action, with the same force and effect as it fully set forth at length herein.

152. At all of the times herein mentioned, Derivative Plaintiff was the lawful wedded wife/husband of Plaintiff in the first and second causes of action, and as such was entitled to his/her services, society, support, consortium, companionship, love, attention, and affection.

153. As a result of all of the foregoing, Derivative Plaintiff has been deprived of the consortium, companionship, love, attention, and affection of his/her wife/husband, Plaintiff in the first and second causes of action, without any negligence by the plaintiff or the derivative plaintiff.

154.  As a result of all of the foregoing, Derivative Plaintiff has been deprived of the social, familial and/or marital services, society, guidance, care, support, consortium, companionship, love, attention, affection, understanding, and obligations of his/her spouse, Plaintiff, in the first and second causes of action, without any negligence by the plaintiff or the derivative plaintiff.

155.  By reason of the acts of defendant herein, their agents, servants, employees, Derivative Plaintiff necessarily paid or became obligated to pay certain expenses, and has suffered other economic losses, without any negligence by the plaintiff or the derivative plaintiff.

156.  As a result of the aforementioned acts of the defendant, Derivative Plaintiff, has been damaged in sum of TEN MILLION DOLLARS ($10,000,000.00) and or as determined by a Jury or this Court, together with costs and disbursements and interest from the "date of accident" until collection of judgment, or as otherwise ordered.


## IX.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR WRONGFUL DEATH

157.  Representative Plaintiff, repeat, reiterate and re-allege each and every allegation contained  in the First, Second, Third and Fourth Causes of Action, with the same force and effect as if fully set forth at length, herein.

158.  That solely as a result of the acts of the defendant in violation of the Statutes asserted, the Plaintiff decedent, was caused to die on: see Plaintiff-Specific Complaint by Adoption.

159. That solely as a result of the negligence of the defendants, and their carelessness and recklessness, the Plaintiff decedent, was caused to die on: see specification within Plaintiff-Specific Complaint by Adoption.

160. The wrongful death of Plaintiff decedent was occasioned by reason of the aforementioned acts and negligence and violation of statutes, of and/or by defendants herein, their agents, servants, employees, said death occurring on the following date: See Plaintiff-Specific Complaint by Adoption, and said wrongful death was in no way contributed to by Plaintiff's decedent or Derivative Plaintiff, if any.

161. In addition, prior to death, Decedents experienced terror, fear or impending death, illness, physical, and emotional pain and suffering as a result of the injuries suffered due to Defendants' negligence, gross negligence, strict liability, acts, omissions, and recklessness.

162. That Representative Plaintiff was appointed, by the issuance of Letters of Administration, as Administrator of the Goods, Chattels, and Credits of Plaintiff decedent, by the Surrogate Court, State of New York, in the County of: See Plaintiff-Specific Complaint by Adoption. Said appointment was made on: See Plaintiff-Specific Complaint by Adoption.

163. That Representative Plaintiff was appointed, by the issuance of Letters Testamentary, as Executor of the Estate of Plaintiff Decedent, , and Credits of Plaintiff decedent, by the Surrogate Court, State of New York, in the County of: See Plaintiff-Specific Complaint by Adoption. Said appointment was made on: See Plaintiff-Specific Complaint by Adoption.

164.  That decedent left surviving his/her lawful distributees who have suffered pecuniary injury and other injury as a result of his death.

165.  That decedent left surviving his lawful distributees, dependent and non-dependent, who have suffered loss of society, social, and familial obligations, and services and duties and other injury as a result of his/her death.

166.  By reason of the foregoing, the Defendants are therefore liable to Plaintiff for the Decedent's surviving cause of action for terror, fear of impending death, illness, physical and emotional pain and suffering caused by the illness and injuries Decedent suffered.

167.  As a result of the aforementioned acts of the defendant, Representative Plaintiff in the fourth cause of action, on behalf of the lawful distributees of Plaintiff Decedent, has been damaged in sum of TWENTY MILLION DOLLARS ($20,000,000.00), and or as determined by a Jury or this Court, together with costs and disbursements and interest from the "date of accident" until collection of judgment, or as otherwise ordered.

## X.

### PRAYER FOR RELIEF

**WHEREFORE**, the above-named Plaintiff demands judgment against the above-named Defendants in the amount of TWENTY MILLION DOLLARS ($20,000,000.00), on the First Cause of Action; and in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) on the Second Cause of Action; and in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) on the Third Cause of Action; and Derivative

Plaintiff demands judgment against the above named Defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00) on the Fourth Cause of Action; and Representative Plaintiff demands judgment against the above named Defendants in the amount of TWENTY MILLION DOLLARS ($20,000,000.00) on the Fifth Cause of Action, and or as determined by a Jury or this Court, a**nd/or in a different amount if so alleged in an individual Check-Off Complaint**, **and as to all Demands for Relief,** jointly and severally, for general damages, special damages, and for his/her attorneys' fees and costs expended herein and in a non-specified amount to be determined by a Jury or this Court for punitive and exemplary damages, and for prejudgment interest where allowable by law and post judgment interest on the judgment at the rate allowed by law; and Plaintiff seeks such other relief as is just and equitable.

## XI.

### JURY TRIAL DEMAND

Plaintiff demands that all issues of fact in this case be tried to a properly empanelled jury.

Dated: New York City, NY
        June 14, 2007

Yours, etc.

_____
Filed on behalf of  the Plaintiffs
Gregory J. Cannata, esq. (1835) Liaison
In Re Lower Manhattan Disaster Site
Litigation pursuant to Order Regulating
Proceedings, June 4, 2007, Alvin K.
Hellerstein, U.S.D.J.